Filed 6/24/14  In re F.P. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re F.P. et al., Persons Coming Under the Juvenile Court Law. | B253142 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>TIFFANY B.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK74133) |

        APPEAL from orders of the Los Angeles County Superior Court. Donna Levin, Juvenile Court Referee.  Affirmed.

        Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

        John F. Krattli, County Counsel, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

Tiffany B. (hereafter Mother) appeals two orders of the juvenile dependency court denying two petitions filed pursuant to Welfare and Institutions Code section 388 without a hearing.[1]  We affirm the juvenile court's orders.

## STATEMENT OF FACTS

We examined the facts and procedural history of the current juvenile dependency proceeding in two prior unpublished opinions.  (See *In re F.P.* (May 14, 2012, B235638) [nonpub. opn.]; and see *In re F.P.* (Apr. 30, 2014, B250054) [nonpub. opn.].)[2]  We need not revisit those facts and history in full here.  Instead, we briefly summarize the facts and history of the case to establish the context for Mother's section 388 petitions which we address in this opinion.

In 2008, the Los Angeles County Department of Children and Family Services (DCFS) detained Mother's four children.  Only two children, F.P. (born in June 2004) and Fr. P. (born in Feb. 2006) are the subject of Mother's section 388 petitions which are at issue in the current appeal.[3]  The juvenile court sustained a petition alleging the children were at risk of harm within the meaning of section 300, subdivisions (b), (g), and (j), due to Mother's mental and emotional problems and failure to take prescribed medications.

In April 2010, the juvenile court terminated Mother's reunification services, and, in October 2010, the court appointed the children's paternal grandparents as their legal guardians.  The children's father, Frankie P., who was incarcerated and serving a prison term of 40 years to life, died in December 2010.

Shortly after the juvenile court entered its orders appointing the paternal grandparents as the children's legal guardians, Mother began to file regular section 388 petitions seeking changes of the court's existing orders, including the legal guardianship.

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Mother has filed more than one-half dozen appeals from various orders in the dependency proceedings since its inception.

[3]    We hereafter refer to F.P. and Fr. P. collectively as the children.

In May 2012, we affirmed an order denying a petition filed by Mother in July 2011. (See *In re F.P., supra*, B235638.)

In a December 2011 status review report, DCFS advised the juvenile court that the paternal grandparents and the children were living in a two bedroom apartment, and that the children were progressing and maturing age appropriately, and were very attached to the paternal grandparents. (*In re F.P., supra*, B250054.) At the conclusion of a December 2011 hearing, the juvenile court ordered the children be released to the paternal grandparents, and terminated jurisdiction. The court also ordered: "As long as Mother is appropriate, Mother may have reasonable monitored visits with the children at least 1 time per month, 1 hour per visit, monitored by a monitor approved by legal guardian."

After the December 2011 orders, Mother continued to file regular section 388 petitions. Mother filed two separate section 388 petitions in May 2012, December 2012 and two more in March 2013, and April 2013. The juvenile court denied all of the petitions. Earlier this year, we affirmed the order denying the petition filed by Mother in April 2014. (See *In re F.P., supra*, B250054.)

On October 29, 2013, Mother filed another section 388 petition. In this petition, mother alleged a change of circumstances as follows:

"My youngest daughter private part is infected with blisters. It appear to me as if she's been molested or [has] a bad yeast infection. I saw white thick fluids from her private part. I saw my daughter being hit in the head by Ema P[.] When my kids are sick I buy them medicine. My mom and sister are witnesses to this, the neglect of my kids. DCFS failed the first time. I continue to provide for my kids."

Regarding the new orders that she wanted the juvenile court to make, Mother wrote:

"I would want for the court to order DCFS to take my kids for a medical exam. An order to interview [juvenile court referee] Jacqueline Lewis. A order to terminate

3

guardianship and have my kids remove.  A order to reopen my family reunification with the return of getting my kids back into my care."

Mother attached several documents to her section 388 petition including a receipt from a 99¢ Only store, a PTA card dated 2010-2011, a receipt from a Panda Express restaurant and several additional receipts from a Chuck E. Cheese's restaurant and other venues, purporting to show she had paid for her children's birthday parties.

At a hearing on November 1, 2013, the juvenile court ruled that Mother had not shown that reopening family reunification services as she had requested was in the best interests of the children.  The court summarily denied mother's section 388 petition, but noted further:  "[I]ncluded in this 388 are some allegations that do need to be addressed regarding one of the children was stricken by the current caregiver."  The court ordered DCFS to initiate a child abuse referral.  Mother filed an appeal.

On December 12, 2013, Mother filed another section 388 petition.  This petition, too, alleged that her daughter's private parts showed "blistering and infection."  Mother alleged that she had notified DCFS and called the Long Beach Police Department, who then spoke with the children.  Mother alleged that it was wrong of the police not to have taken Fr. P. to the hospital.  Mother also alleged that, since she started to complain about the paternal grandparents, they had not allowed her to visit the children.  Mother alleged she last saw the children on or about October 25, 2013.  With regard to a change in the court's existing orders, Mother requested that the juvenile court terminate the guardianship and reopen family reunification services for her so that she could resume "legal and physical custody" over the children.

On December 13, 2013, the juvenile court summarily denied Mother's section 388 petition.  Mother filed an appeal.

We consolidated Mother's two appeals and address them together in this opinion.

4

**DISCUSSION**

The juvenile court's decision to deny a section 388 petition is reviewed under the abuse of discretion standard. (See *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.) The abuse of discretion standard applies when the court denies a section 388 petition with or without a hearing (see *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250), although we are cognizant that a different contextual framework is presented in the hearing versus no hearing situations. A section 388 petitioner is entitled to a hearing when his or her petition makes a prima facie showing that (1) new evidence or a change in circumstances has come to light; and (2) a proposed change in the juvenile court's existing orders would be in a child's best interests. (See *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) A section 388 petition should be liberally construed for such a prima facie showing. (*Ibid.*) A hearing may be denied when a petition fails to reveal any change of circumstance or new evidence which would support a change of existing orders. (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414.)

**A.    *Changed Circumstances***

A parent is entitled to a hearing on a section 388 petition when the petition alleges a change in circumstance that justifies changing the juvenile court's prior orders. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 592.) However, more than "general, conclusory allegations" is required to compel a hearing. (*Ibid.*) The petition must allege facts which would sustain a favorable decision if the evidence submitted in support of the allegations were credited. (*Id.* at p. 593.) We agree with Mother that she satisfied this element of the section 388 procedure. Mother's petitions alleged facts that showed a change in circumstances, namely, physical signs consistent with poor care, at least, and possibly with abuse. Mother's petition also alleged "hitting" of a child. The juvenile court acknowledged that there were allegations in Mother's October 2013 petition to justify an investigation by way of the referral process. DCFS's arguments on appeal that Mother's allegations were not true or were too unbelievable applies too high a bar as the test of whether a hearing on a section 388 petition is warranted. A hearing determines whether a petition's allegations are truthful.

5

**B.**     *Best Interests of the Children*

The juvenile court did not abuse its discretion in denying Mother's petitions without a hearing because Mother failed to establish a prima facie showing that granting the changes in the orders that she requested would be in the children's best interests. Factors relevant to whether the change would be in the child's best interest include "the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.)

Mother's petitions alleged no facts about any changes in *her* circumstances to support giving her custody or reopening reunification services. Because Mother sought orders to the end of placing the children in her care, she was required to make a prima facie showing that her circumstances had changed such that she could be considered an appropriate placement for the children. (*In re Brittany K., supra*, 127 Cal.App.4th at p. 1506 [affirming the refusal of a hearing when "[v]irtually the entire focus of appellant's section 388 petition . . . was on the alleged unsuitability of the minors' foster placement . . . ."].) In short, Mother alleged no new facts to support findings that she is able to provide for the children. Mother's petitions alleged no information on the "mental and emotional problems" that were sustained at the outset of the dependency proceedings.

The record demonstrates that the juvenile court ordered DCFS to investigate Mother's allegations concerning the paternal grandparents. On the record before us, we find no more was required. Mother's petitions failed to make a prima facie showing that the proposed changes that she requested would be in the best interests of the children. For this reason, the juvenile court did not abuse its discretion in denying mother's section 388 petitions without a hearing.

6

## DISPOSITION

The juvenile court's orders are affirmed.

BIGELOW, P.J.

We concur:

FLIER, J.

GRIMES, J.